UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEPHEN GOULD CORPORATION,

    Plaintiff,

v.

MOON SELFIE, INC.,

    Defendant.

Civil Action No.

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiff Stephen Gould Corporation ("SG" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint as against Defendant MOON Selfie, Inc. d/b/a MOON Ultra, Inc. ("MOON" or "Defendant"), and alleges as follows:

### **NATURE OF THE CASE**

1. Plaintiff brings this action against Defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, negligent misrepresentation, and unjust enrichment, arising out of Defendant's failure to pay for over $10 million worth of manufactured goods, component parts and other materials and services necessary to produce additional goods, all reasonably procured by the Plaintiff in reliance on Defendant's written and oral agreements and related representations.

2. Specifically, Plaintiff suffered damages of over $3,156,032.13 as a result of Defendant's failure to pay for manufactured goods Plaintiff procured for Defendant at Defendant's request, as well as damages of over $7,712,609.74 as a result of Defendant's failure

to pay for various component parts, packaging materials and related manufacturing services necessary to produce additional manufactured goods purchased by the Plaintiff for the benefit of Defendant in reliance on Defendant's orders, representations and agreements to pay those costs.

## PARTIES

3. Plaintiff is a New Jersey corporation with its principal place of business located at 35 South Jefferson Road, Whippany, New Jersey 07981.

4. Defendant is a Delaware corporation with its principal place of business located at 198 Tremont Street, Suite 275, Boston, Massachusetts 02216.

## JURISDICTION & VENUE

5. There exists complete diversity of citizenship between Plaintiff and Defendant pursuant to 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1).

6. This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest or costs.

7. Venue is appropriate in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(1), as Defendant maintains its principal place of business within this District.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### Plaintiff's Business

8. Plaintiff provides supply chain management and related solutions, including but not limited to the acquisition of component parts, manufactured products, product packaging, and related manufacturing services, to fulfill customer orders.

9.      Plaintiff is incorporated and headquartered in New Jersey, with international operations supported by offices in Brazil, Mexico, Malaysia, and China.

## Defendant's Business And Its UltraLight Devices

10.     Defendant is a consumer products company specializing in high tech lighting products for cameras and cell phones.

11.     Specifically, Defendant developed and sells the "UltraLight," a device designed to be attached to smart phones or other cameras in order to adjust the brightness, color and ambient light of their photographs.

12.     Defendant markets the UltraLight as an accessory that "works with everything – even alone," suggesting consumers can "take it in hand to provide ambient, background, or spot lighting."

13.     Defendant's website further notes that the UltraLight features customizable "color temp and brightness" settings, has a "powerful new processor and touch controls," includes a "long-lasting battery and fast-charging USB-C cable," and "works with virtually every device."

14.     Despite its size, the UltraLight is a fairly complex product that requires several different component parts and accessories, including but not limited to a microcontroller unit (MCU), charging cable, battery, LED light, plastic covering, and packaging.

**Defendant's Engagement of Plaintiff's Manufacturing Services**

15. Beginning in 2017, Defendant purchased various products and services from Plaintiff, including packaging, accessories, kitting and fulfillment services for Defendant's first general UltraLight product.

16. In the fourth quarter of 2020, Defendant asked Plaintiff to expand its role by taking on responsibility for producing the second generation UltraLight product, while continuing to acquire packaging and accessories, and to provide kitting and fulfillment services, on Defendant's behalf.

17. Pursuant to this expanded role, Plaintiff procured component parts, packaging and related materials to produce and deliver initially prototype products, and then the beginning of an inventory of manufactured UltraLight products for Defendant to sell at retail, along with the necessary materials and production capacity to continue production based on Defendant's anticipated need for UltraLight products.

18. Effective as of December 9, 2020, the parties entered into a "reverse" Non-Solicitation Agreement (the "NSA") in which Defendant affirmed that it engaged Plaintiff to provide specified products and services, including without limitation "[m]anufacturing and assembly of MOON UltraLight device" and related packaging and accessories, and Defendant agreed it would not purchase those products and materials from Plaintiff's suppliers directly. A true and accurate copy of the NSA is annexed hereto as **Exhibit 1**.

19. Effective as of March 31, 2021, Plaintiff and Defendant entered into an Agreement Relating To Moon Selfie Light (V1.5) (the "IP Letter Agreement"), pursuant to which, among other things, the parties agreed upon specifications for production of a

"Prototype" product and related tooling and equipment necessary to produce MOON UltraLight devices ("Specifications"), and Plaintiff agreed to assign the intellectual property rights in the designs, processes and inventions developed in connections with those Specifications and the Prototype.  A true and accurate copy of the IP Letter Agreement is annexed hereto as **Exhibit 2**.  A true and accurate copy of the statement of work identified as Exhibit A to the IP Letter Agreement is annexed hereto as **Exhibit 2A**.

20. In addition to the NSA and the IP Letter Agreement, and in furtherance of the parties' long-term manufacturing services relationship, Plaintiff and Defendant negotiated the terms of a Manufacturing Services Agreement ("MSA"), pursuant to which Plaintiff would continue to procure the necessary component parts, packaging and product manual materials, and would acquire devoted manufacturing lines at an agreed-upon facility, in order for Plaintiff to procure and deliver a steady supply of MOON UltraLight devices for the Defendant to resell to consumers.  A true and correct copy of the last version of the MSA, the terms of which were agreed to by the parties, is annexed hereto as **Exhibit 3**.

21. Among other things, the MSA specified that Plaintiff would "provide the space and labor to ramp-up production as required by [Defendant], currently consisting of eight (8) production lines (the "Designated Production Lines") at specified prices.  *See* Ex. 3, § 2.4(a).

22. Plaintiff and Defendant reached agreement as to the essential terms of the MSA.  Specifically, on February 8, 2022, Eric Massie, a Sales Agent acting on behalf of Plaintiff, sent an e-mail to Peter Wingsoe, a representative of Defendant, attaching Plaintiff's edits and mark-ups to the then-latest draft of the MSA.  On June 2, 2022, in response to Plaintiff's February 8 e-mail, Edward Madongorere, the Co-Founder and CEO of Defendant, sent an email to Plaintiff

acknowledging that the terms of the MSA were agreed upon and indicating that Peter Wingsoe would be "reaching out" to execute the MSA.

23.     Plaintiff relied on the parties' established manufacturing services relationship and Defendant's written and oral representations concerning its agreement to pay for all component parts, packaging materials, manufactured MOON UltraLight Prototype devices and the creation of manufacturing lines capable of regular production of additional MOON UltraLight devices, in continuing to provide those services to, and to incur significant costs on behalf of, the Defendant.

### **Defendant's Failure To Pay All Amounts Due And Owing To The Plaintiff**

24.     Plaintiff's reasonable reliance on Defendant's written and oral representations, purchase orders, and approvals of supplier agreements pursuant to which Plaintiff would incur significant expenses in order to produce MOON UltraLight devices, as well as Defendant's agreements to pay for the Plaintiff's manufacturing services, caused Plaintiff to suffer damages in the amount of at least $10,618,641.87, when Defendant failed to pay Plaintiff's resulting invoices in full.

25.     With Defendant's knowledge and assent, Plaintiff negotiated a Contract Manufacturing Services Agreement ("MSA") with Aztech Technologies Pte. Ltd. ("Aztech") for the production of MOON UltraLight devices.

26.     Over a number of months, Plaintiff worked with MOON and Aztech to prepare for large-scale production of MOON UltraLight devices, including without limitation: (i) developing the firmware for the UltraLight; (ii) producing the tooling and assembling the production lines necessary to produce the UltraLight ; (iii) testing and validating the design and

engineering of the UltraLight; and (iv) testing and validating the process by which the UltraLight would be manufactured.

27.     In connection with and giving rise to Plaintiff's efforts, Defendant issued numerous purchase orders to Plaintiff to perform services, procure supplies and produce products.  A summary statement of Defendant's purchase orders reflecting the amounts attributable to each, payments made, and the net amount due totaling $10,618,641.87, is annexed hereto as **Exhibit 4**.

28.     In addition, at Defendant's request, Plaintiff made spot market purchases of a critical, and costly, component of the MOON UltraLight products called a Microcontroller ("MCU"), to address concerns that an inconsistent supply chain for MCUs might interfere with steady production of the UltraLight devices as MOON ramped up its purchases.  Defendant agreed to pay for those spot market purchases in full and receive a credit back as the MCUs were incorporated into fully manufactured and assembled UltraLight devices purchased by Defendant.

29.     In addition, Defendant instructed Plaintiff to assemble and maintain eight full production lines at Aztech in order to have sufficient capacity to produce and supply 250,000 units of the UltraLight device per month, for which Plaintiff was to pay Aztech and Defendant in turn would pay Plaintiff, pursuant to the parties' agreements.

30.     In reliance on Defendant's instructions and agreements to pay for idle manufacturing capacity and / or below minimum production, Plaintiff acquired the necessary tooling and equipment, and Aztech then assembled a total of four manufacturing lines ready to produce MOON UltraLight devices, holding the remainder in storage to be assembled as production ramped up.

31. Pursuant to the parties' agreements, Plaintiff issued a series of invoices to Defendant, totaling $11,530,956.81, for the agreed upon amounts to be paid for the MOON UltraLight products, equipment, tooling, components, packaging, kitting, fulfillment and related manufacturing services referenced above. Annexed hereto as **Exhibit 5** are true and accurate copies of Plaintiff's invoices. To date, despite repeated demands for full payment, Defendant only has paid a total of $912,314.94 due on Plaintiff's invoices. *See* Exhibit 4.

32. Defendant has not questioned the accuracy of any of Plaintiff's invoices, nor has Defendant disputed its obligation to pay any of Plaintiff's invoices in full. Instead, Defendant simply has failed to pay Plaintiff $10,618,641.87 on invoices due and owing, without excuse or justification.

## COUNT ONE
### (Breach of Contract)

33. Plaintiff repeats and re-asserts each of the allegations in paragraphs 1 through 32 above as if fully set forth herein.

34. Plaintiff and Defendant reached a valid and binding contract, pursuant to which Defendant agreed to pay Plaintiff for products, packaging, equipment, tooling and related manufacturing services, including without limitation the production and delivery of MOON UltraLight devices, component parts necessary to manufacture, package and distribute additional MOON UltraLight devices, and the procurement of manufacturing capacity to fulfill ongoing and future orders for MOON UltraLight products by the Defendant.

35. Plaintiff performed all conditions precedent and fulfilled each obligation imposed upon it pursuant to the parties' contractual agreements.

36. Defendant has breached the parties' contractual agreements by – among other things – failing to pay the full amount of Plaintiff's invoices.

37. Specifically, Defendant's breach of the parties' agreement has caused Plaintiff to suffer damages totaling at least $10,618,641.87.

## COUNT TWO
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

38. Plaintiff repeats and re-asserts each of the allegations in paragraphs 1 through 32 above as if fully set forth herein.

39. Plaintiff and Defendant reached a valid and binding contract, pursuant to which Defendant agreed to pay Plaintiff for manufacturing services, including without limitation the production and delivery of MOON UltraLight devices, component parts necessary to manufacture, package and distribute additional UltraLight devices, tooling and equipment necessary to manufacture MOON UltraLight devices, and the procurement of manufacturing capacity to fulfill ongoing and future orders for MOON UltraLight products by the Defendant.

40. The parties' contractual agreements include an implied covenant of good faith and fair dealing applicable to both parties.

41. Defendant breached the implied covenant of good faith and fair dealing inherent in the parties' contractual agreements by, among other things, accepting Plaintiff's investment of millions of dollars into the development of the specifications for the second generation of Defendant's MOON UltraLight product, including the manufacture of Prototype products, tooling, equipment, component parts, packaging and manufacturing capacity to produce a steady supply of additional MOON UltraLight products, all of which permitted Defendant to build

brand recognition and raise capital investments, without honoring its promise to pay for all of the costs incurred by the Plaintiff.

42. Defendant's conduct proximately caused Plaintiff to suffer the loss of the reasonably anticipated fruits of its labor and investments performing the parties' contractual agreements.

43. Plaintiff has suffered damages totaling at least $10,368,641.87 as a direct result of Defendant's breach of the implied covenant of good faith and fair dealing.

### COUNT THREE
### (Promissory Estoppel)

44. Plaintiff repeats and re-asserts each of the allegations in paragraphs 1 through 32 above as if fully set forth herein.

45. Throughout the course of the parties' business relationship, Defendant made several material representations and promises to Plaintiff pursuant to which Defendant committed to pay the full amount due and owing to Plaintiff for the production of MOON UltraLight Prototype and other products, acquisition of component parts, packaging materials, accessories, tooling and equipment and related manufacturing services procured at Defendant's requests.

46. Defendant should have reasonably expected its promises and representations to induce action of a substantial and definite character on the part of Plaintiff, including without limitation Plaintiff's investment of millions of dollars to fulfill Defendant's purchase orders and other requests for manufacturing services.

47. Defendant's promises and representations induced action by the Plaintiff, including without limitation the expenditure of significant time and resources and the payment of

millions of dollars, to procure the manufactured UltraLight Prototype and other products, as well as component parts, accessories, tooling, equipment, packaging and related materials, and the manufacturing capacity necessary to fulfill Defendant's promised ongoing orders.

48. Plaintiff has suffered significant damages by virtue of its reliance on Defendant's promises and representations.

49. Injustice to Plaintiff can only be avoided by the enforcement of Defendant's promises to make full payment of all amounts invoiced by the Plaintiff.

## COUNT FOUR
### (Negligent Misrepresentation)

50. Plaintiff repeats and re-asserts each of the allegations in paragraphs 1 through 32 above as if fully set forth herein.

51. In the course of Defendant's regular business and throughout the course of the business relationship between Plaintiff and Defendant, Defendant provided false information on which Plaintiff relied in conducting business transactions.

52. Specifically, Defendant repeatedly induced Plaintiff to expend significant time and resources to obtain and purchase MOON UltraLight Prototype and other products, as well as the various component parts, accessories, packaging, equipment, tooling and manufacturing capacity necessary to produce additional MOON UltraLight products.

53. Plaintiff justifiably and reasonably relied on Defendant's false representations.

54. Defendant failed to exercise reasonable care and competence in obtaining and communicating information to the Plaintiff relating to Defendant's need and ability to pay for MOON UltraLight devices and all of the expenses necessary to produce MOON UltraLight products at the volume it requested.

55.  Defendant's false representations proximately caused and resulted in Plaintiff suffering substantial harm, including without limitation the procurement of products, component and parts, packaging, tooling, equipment and manufacturing capacity, the value of which has been substantially impaired as a result of the falsity of Defendant's representations.

## COUNT FIVE
### (Unjust Enrichment)

56.  Plaintiff repeats and re-asserts each of the allegations in paragraphs 1 through 32 above as if fully set forth herein.

57.  Throughout the course of the business relationship between Plaintiff and Defendant, Plaintiff conferred a significant benefit upon Defendant, and Defendant repeatedly expressed an understanding and expectation that it was obligated to pay Plaintiff for the value of the benefit bestowed by Plaintiff's actions and services.

58.  Specifically, Plaintiff obtained and purchased the fully manufactured MOON UltraLight Prototype and other products, as well as the various component parts, ancillary parts, packaging, tooling, equipment and manufacturing capacity identified above.

59.  Defendant requested and accepted the benefits conferred upon it by Plaintiff knowing that Plaintiff reasonably expected Defendant would pay Plaintiff for the value of those benefits.

60.  Defendant's retention of the benefits conferred upon it by Plaintiff without being required to make payment of the full fair market value would be inequitable.

## COUNT SIX
### (Quantum Meruit)

61. Plaintiff repeats and re-asserts each of the allegations in paragraphs 1 through 32 above as if fully set forth herein.

62. Plaintiff conferred a measurable benefit upon Defendant, specifically, delivering MOON UltraLight Prototype and other products as well as the various component and ancillary parts, packaging, tooling, equipment and manufacturing capacity identified above.

63. Plaintiff reasonably expected compensation from Defendant in connection with the benefit conferred upon Defendant.

64. Defendant requested and accepted the value of Plaintiff's manufacturing services with the actual or chargeable knowledge of Plaintiff's reasonable expectation that it would receive payment for the benefit it bestowed on Defendant.

65. By virtue of Defendant's inequitable failure to provide Plaintiff with compensation for the benefit Plaintiff conferred upon it, Plaintiff has suffered damages.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant for an Order from this Court as follows:

1. Directing Defendant to pay to Plaintiff monetary damages as well as any general, specific, consequential, indirect and/or statutory damages permitted by applicable law associated with Defendant's conduct described herein, in the amount of at least $10,368,641.87;

2. Awarding Plaintiff all of its direct and consequential costs, including but not limited to expenses and lost business profits and opportunities;

3.  Awarding Plaintiff the costs it incurs pursuing this lawsuit;

4.  Awarding Plaintiff pre- and post-judgment interest; and

5.  Awarding Plaintiff any such other and further relief as this Court may deem just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | STEPHEN GOULD CORPORATION<br>By its attorneys, |
|  | */s/ Steven M. Cowley*<br>Steven M. Cowley, Esq.<br>BBO No. 554534<br>**DUANE MORRIS LLP**<br>100 High Street, Suite 2400<br>Boston, MA 02110-1724<br>T: (857) 488-4200<br>F: (857) 488-4201<br>E: SMCowley@duanemorris.com |
| Dated:  May 11, 2023 |  |